**E-FILED on** ___3/6/07___

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA SANGERMAN, TERESA ORDUNO, RICARDO ROJAS & ROSA DELGADO,<br><br>Plaintiffs,<br><br>v.<br><br>THERIAULT ENTERPRISES INC., LEO THERIAULT & DOES 1-10,<br><br>Defendants. | No. C-05-04183 RMW<br><br>ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT<br><br>**[Re Docket No. 24]** |

    Plaintiffs Maria Sangerman, Teresa Orduno, Ricardo Rojas, and Rosa Delgado ("plaintiffs") move for the court to enforce a settlement agreement. Plaintiffs also move for monetary sanctionsa against defendants pursuant to 28 U.S.C. § 1297 on the basis that defendants' conduct has unnecessarily and vexatiously multiplied the proceedings in this case. Defendants Theriault Enterprises Inc. and Leo Theriault ("defendants") filed a notice of non-opposition, and further indicated that they intend for this matter to be submitted without oral argument by defendants. The court has read the papers submitted by the parties and considered the arguments of counsel. For the reasons set forth below, the court GRANTS plaintiffs' motion to enforce the settlement agreement between the parties for settlement of this action in the amount of $65,000.

United States District Court / For the Northern District of California

# I. BACKGROUND

Defendants are owners of a Wienerschnitzel restaurant in Salinas, California. Decl. of Adam Wang Supp. Pls.' Mot. Enforce ("Wang Decl.") ¶ 2. In October 2005 plaintiffs sued defendants, alleging that defendants, as their former employer, failed to pay overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, and California labor laws. *Id.* ¶ 3. On September 15, 2006 the parties participated in mediation, which was unsuccessful. Plaintiffs indicate that they were amenable to a settlement amount of $65,000 as early as the mediation session. *See id.* ¶ 4. Thereafter, negotiations between the parties continued. On December 5, 2006 counsel for defendants telephoned counsel for plaintiffs, stating that (1) the contemplated sale of the Wienerschnitzel restaurant had failed and (2) defendants agree to settle the case for $65,000 with 20% of the total settlement paid twenty days following execution of the settlement agreement and the remaining amount paid by a loan defendants would secure. *Id.* ¶ 6.

On December 11, 2006 plaintiffs' counsel confirmed, by e-mail, the terms orally discussed. The e-mail stated that defendants agreed to pay a total of $65,000 in settlement of the action with the first payment of 20% to be paid in twenty days. *Id.* ¶ 7; Ex. 1. The e-mail further clarified (1) the remaining $45,000 should be paid within a reasonable time to be agreed to by plaintiffs, and (2) both defendants shall sign the agreement and be liable under the agreement. *Id.* Counsel for defendants replied on December 12, 2006 stating: "Got the message. Will draft the settlement agreement as agreed. However, the first payment was to be $20,000. I believe that is all the [sic] he can get his hands on until he gets approval for a loan for the remainder of the agreed sum." *Id.* ¶ 8; Ex. 2.

On December 21, 2006 counsel for defendants suggested that plaintiffs' counsel could draft the settlement agreement if he chose. *Id.* at Ex. 3. That same day counsel for plaintiffs forwarded a draft settlement agreement for defendants' review. *Id.* The draft agreement indicated (1) the defendants shall pay $65,000 to settle the entire case, (2) $20,000 shall be paid twenty days from execution of the agreement, and (3) the remaining $45,000 shall be paid thirty days thereafter. *Id.* at Ex. 4. Later that day, counsel for defendants responded via e-mail indicating some changes to the draft agreement:

> Theriault needs at least 30 days to pay the $20,000. Also, since he is seeking some refinancing in order to pay the amount of the agreement, I have provided for the

> second payment to be received within 45 days after the first payment. That should allow him sufficient time to get a loan. It will be difficult because of the bankruptcy and poor credit rating. Let me know if this agreement works. If so, I will forward a copy to Mr. Theriault for his signature.

*Id.* ¶ 10; Exs. 5-6.

Counsel for plaintiffs responded that the agreement "looks ok, except the allocation of the first payment of $20,000 among the plaintiffs. Let me check with them, and get back to you." *Id.* at Ex. 7. On December 26, 2006 plaintiffs executed the settlement agreement as revised by counsel for defendants. *Id.* ¶ 12; Ex. 8. On December 28, 2006 counsel for plaintiffs e-mailed the executed settlement agreement to counsel for defendants for defendants' signature. *Id.* ¶ 13; Ex. 9. Counsel also indicates that he called counsel for defendants who confirmed that her clients would execute the settlement agreement and return it that same day. *Id.* ¶ 14.

On January 2, 2007 counsel for defendants e-mailed plaintiffs' counsel and indicated that her clients have not signed the agreement because they had not been able to obtain a loan as contemplated. Defendants sought to revise the payment terms of the second payment under the settlement agreement to allow them to make monthly payments over approximately two years. *Id.* at Ex. 10. Counsel for defendants confirmed that defendants would be able to make the $20,000 payment within thirty days. *Id.*

Plaintiffs now move to enforce the terms of the settlement agreement as memorialized in the written agreement signed by plaintiffs even though defendants never executed that agreement. As noted above, defendants filed a notice of non-opposition.

## II. ANALYSIS

A district court has inherent power to enforce an agreement in settlement of litigation pending before it. *See In re Suchy*, 786 F.2d 900, 903-04 (9th Cir. 1985).

### A.   Existence of Settlement Agreement

As indicated by the terms of the agreement, California substantive law governs the interpretation of the settlement agreement.[1] Settlement agreements are merely one type of contract and should be governed by the laws governing contracts in general." *Nicholson v. Barab*, 233 Cal.

---

[1]   Plaintiffs did not cite any California case law and rely on a Washington district court case in support of their substantive argument that a binding agreement exists.

ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT—No. C-05-04183 RMW
SPT                                                     3

App. 3d 1671, 1683 (1991).  In California, "[a]n oral agreement of settlement . . . need not be in writing" if it does not fall within the statute of frauds.  *People ex rel. Dept. Pub. Wks. v. Douglas*, 15 Cal. App. 3d 814, 820 (1971).  Further, "settlements are highly favored because they diminish the expense and persistency of litigation." *Hastings v. Matlock*, 171 Cal. App. 3d 826, 837 (1985) (internal quotation marks and citations omitted).

In California, an oral agreement may give rise to a binding oral contract:

> Where parties reach an oral agreement with the expectation that a written agreement will follow, two possibilities exist: Negotiations can result in a binding oral contract when all of the terms are definitely understood, even though the parties intend to later execute a formal writing.  Alternatively, where the parties understood that the proposed agreement is not complete until reduced to formal writing and signed, no binding contract results until this is done.

*Khajavi v. Feather River Anesthesia Medical Group,* 84 Cal. App. 4th 32, 62 (2000); *see also Banner Entertainment, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 358 (1998) ("[I]f the respective parties orally agreed upon all of the terms and conditions of a proposed written agreement with the mutual intention that the oral agreement should thereupon become binding, the mere fact that a formal written agreement to the same effect has not yet been signed does not alter the binding validity of the oral agreement.").  As set forth in *Kreling v. Walsh*, 77 Cal. App. 2d 821, 834-35 (1947), the test of whether there is an enforceable oral agreement is:

> did the minds of the parties meet; that a proposal for a contract was made by one party and accepted by another; that the parties definitely understood and agreed upon the terms of the contract; and, finally, that as a part of the mutual understanding it was agreed that a written contract embodying the terms agreed upon should be prepared and executed by the respective parties.

"Under such circumstances, neither party is at liberty to refuse to perform."  *Id.*

Here, there is no evidence that the proposed written settlement agreement would only be binding when signed by the parties; thus, the fact that defendants have not signed the written settlement agreement does not bar enforcement of the orally agreed-upon terms contained in the contract.  *See Banner Entertainment*, 62 Cal. App. 4th at 358.  Rather, the communications between the parties indicate that defendants and plaintiffs agreed that the entire case would be settled in exchange for defendants paying plaintiffs $65,000.  Therefore, the court finds there to be an agreement to settle this action for $65,000.

However, plaintiffs do not address what the timing of payments would be if the court were to

ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT—No. C-05-04183 RMW
SPT                                                                4

enforce the settlement agreement. It appears the parties had agreed that the timing of payments would be based on the date the written agreement is executed by the parties. Here, there is no executed written agreement. According to the writing between the parties which, although not executed by defendants may be evidence of the final orally agreed upon terms, defendants are to pay $20,000 within thirty days of the execution of the agreement and $45,000 forty-five days thereafter. *See Khajavi*, 84 Cal. App. 4th at 62 ("The terms of a subsequent writing may evidence the terms of the oral agreement but cannot enlarge them."). Plaintiffs executed the written agreement and forwarded it to defendants on December 28, 2006. Plaintiffs indicate that pursuant to a telephone conversation between counsel for the parties, defendants were to sign and return the executed agreement the same day. Thus, it can be inferred that the parties intended that the first payment be made thirty days from December 28, 2006. Plaintiffs do not articulate such an argument here and merely request the court to "enter a judgment in favor of plaintiffs in the amount of $65,000." Pls.' Mot. Enforce at 5:6. In any event, the $65,000 should have been paid by now and defendants have filed a non-opposition to the motion to enforce.

**B.     Sanctions**

Plaintiffs also move for monetary sanctions against defendants "under 28 U.S.C. § 1297." However, no such code section exists. To the extent plaintiffs seek to impose sanctions against defendants' counsel personally pursuant to 28 U.S.C. § 1927, plaintiffs provide no showing that defense counsel acted unreasonably or vexatiously. In fact, plaintiffs provide no argument whatsoever in support of their request for sanctions. The court therefore denies plaintiffs' request for sanctions.

### III.  ORDER

For the foregoing reasons, the court GRANTS plaintiffs' motion to enforce the settlement agreement between the parties for settlement of this action in the amount of $65,000. Judgment will be entered in favor of plaintiffs and against defendants in the amount of $65,000.

DATED:      3/5/07

_Ronald M Whyte_
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

Adam Wang                            waqw@sbcglobal.net

**Counsel for Defendants:**

Robin Kubicek                        robinkubicek@sbcglobal.net

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      3/6/07                                          SPT
                                                    **Chambers of Judge Whyte**